UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
PEORIA DIVISION

| | |
|---|---|
| ANN CRESPO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:24-cv-1175 |
| | ) |
| WINPAK HEAT SEAL CORPORATION, | ) |
| | ) |
| Defendant. | ) |

## ORDER & OPINION

Before the Court is Defendant Winpak Heat Seal Corporation's Motion to Dismiss Plaintiff Ann Crespo's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. 7). Plaintiff has responded. (Doc. 10). This matter is ripe for review. For the following reasons, Defendant's Motion is granted.

### BACKGROUND[1]

Plaintiff, a former employee of Winpak Heat Seal Corporation, has filed a four-count Complaint alleging employment discrimination on the basis of race and ethnicity leading to retaliatory discharge in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* ("Title VII"). (Doc. 1). Plaintiff worked as a human resource manager for Defendant for approximately two months until she was terminated by Defendant's human resources director, Annmarie Ball, on September

---

[1] At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts in the complaint, and draw[s] all reasonable inferences in [the nonmovant]'s favor." *Pierce v. Zoetis, Inc.*, 818 F.3d 274, 277 (7th Cir. 2016). Unless otherwise noted, the alleged factual background is drawn from Plaintiff's Complaint (doc. 1).

22, 2023. (Doc. 1 at 2–3, 30). Plaintiff "is of mixed-race and is half-Latino (Puerto-Rican origin) and half-Caucasian / [w]hite." (Doc. 1 at 1).

Plaintiff alleges discriminatory employment practices based on race and national origin stemming from the practices of her direct supervisor, the human resources director at Winpak. Specifically, Plaintiff alleges that the director granted an African American co-worker (who is a union representative) "lifetime" leave under the Family and Medical Leave Act (doc. 1 at 3–4, 18), and suggested she should befriend the co-worker, implying that her career depended on it. (Doc. 1 at 4, 18). Presumably, during that conversation, the director then asked Plaintiff whether she had children and inquired about the race of her children's father. (Doc. 1 at 4–5). The crux of the allegations is that the director allegedly called Plaintiff a "babymaker" for having four children and commented on the different races of Plaintiff's former and current partners. (Doc. 1 at 4–5). Additionally, Plaintiff asserts that the director showed preferential treatment toward African American employees by offering them higher compensation, which was not extended to white employees. (Doc. 1 at 5).

Plaintiff alleges that multiple other employees were the object of discriminatory practices at Winpak. For example, Plaintiff claims that a female employee reported that a male employee was harassing her to both her and the director. (Doc. 1 at 6). Rather than addressing the issue brought to the human resources department, Plaintiff claims that the director responded by saying that the female employee "needs to stop acting so white" and was "playing [the] victim." (Doc. 1 at 6). Moreover, upon receiving a complaint from an employee, Plaintiff investigated

2

an incident of race-based harassment at Winpak. (Doc. 1 at 16). After completing her investigation, she determined that the director had failed to "investigate or discipline" an employee for their "repeated unprofessional and inappropriate conduct in the workplace." (Doc. 1 at 16). The director confirmed Plaintiff's findings and subsequently instructed her to terminate the employee who was under investigation. (Doc. 1 at 17).

In August 2023, the director allegedly asked Plaintiff, "How do you all (Caucasian / [w]hite people) live with such pale skin?" (Doc. 1 at 10). When Plaintiff tried to change the subject, the director responded by asking, "Are you legal to be here?" (Doc. 1 at 10). Later that month, the director hosted a party at work to celebrate the termination of a white male employee. (Doc. 1 at 11). Plaintiff expressed her discomfort in the celebration to the director but claimed that she was forced to stay and endure cruel comments from co-workers. (Doc. 1 at 11). Following the "termination party," Plaintiff went to the director to file a complaint regarding the comments made at the "party," however, the director did not officially document the complaint or take any remedial action. (Doc. 1 at 12). Plaintiff then alleges that the director told her that the human resources department needed to "focus more on 'color,' " and instructed Plaintiff during the recruiting process to "take the employee referral from the black employees so that we can add more color," and that she was keeping "a 'list' of white employees that she wanted to 'hold accountable.' " (Doc. 1 at 12). Plaintiff claims that she was unwilling to participate when the director sought

3

to terminate two white males from her list; the director explained that this was to "incorporate more diversity and inclusion" at the company. (Doc. 1 at 13).

In September 2023, Winpak's managerial staff expressed concerns to Plaintiff about the director's behavior, describing it as rude and condescending. (Doc. 1 at 19). When Plaintiff discussed these concerns with the director, the director "demanded to know the exact details of every interview and the identities of the employees who made the remarks." (Doc. 1 at 20). Plaintiff refused to disclose this information and was verbally berated, with the director stating that the owners of Winpak essentially permitted her behavior. (Doc. 1 at 21). Additionally, when an employee approached Plaintiff about hiring their daughter, the director reportedly said that she did not "want to hire a white person. You need to get on board with hiring Blacks or Hispanics." (Doc. 1 at 28). Plaintiff objected to these race-based hiring practices, to which the director responded that she was "not basing [hiring] on the color of the skin; I'm basing [hiring] on ethnicity." (Doc. 1 at 28). Plaintiff insisted that "she would not follow such discriminatory hiring practices," and claimed that the director "rejected qualified candidates solely on the basis of color or ethnicity." (Doc. 1 at 28). Shortly after this conversation, Plaintiff reported being verbally berated by the director once again and was subsequently terminated without a legitimate reason. (Doc. 1 at 30).

On October 2, 2023, Plaintiff filed a charge of discrimination with both the Illinois Department of Human Rights ("IDHR") and Equal Employment Opportunity Commission ("EEOC"). (Doc. 1 at 2). After receiving her EEOC right-to-sue letter on

4

February 18, 2024, Plaintiff filed her Complaint on May 2, 2024, alleging that her termination constitutes discrimination in violation of Title VII. Specifically, her Complaint alleges the following: Count I, retaliation in violation of Title VII; Count II, hostile work environment in violation of Title VII; Count III, discrimination on the basis of race in violation of Title VII; and Count IV, reverse discrimination on the basis of race in violation of Title VII. (Doc. 1 at 30–36). Defendant now moves to dismiss Counts I, II, and III of Plaintiff's claims under Rule 12(b)(6), and the entire Complaint under Rule 8 of the Federal Rules of Civil Procedure, attaching a complete version of Plaintiff's EEOC charge of discrimination to its Motion. (Docs. 7, 8).

## LEGAL STANDARD

A complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). Under this standard, "the complaint must describe the claim in sufficient detail to give the defendant 'fair notice of what the . . . claim is and the grounds upon which it rests.' " *E.E.O.C. v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). A motion to dismiss under Rule 12(b)(6) "challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted." *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014). To survive such a motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual

5

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must accept the well-pleaded facts in the complaint as true "and draw all reasonable inferences in favor of the plaintiff." *Kubiak v. City of Chi.*, 810 F.3d 476, 480–81 (7th Cir. 2016). However, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chi.*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Iqbal*, 556 U.S. at 681).

## DISCUSSION

Defendant argues that the Complaint must be dismissed in its entirety because it does not comply with Federal Rules of Civil Procedure 8. (Docs. 7, 8 at 12–15). The Court agrees.

### I. Rule 8 Considerations

Federal Rule of Civil Procedure 8 requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8(a) "is reenforced by Rule 8(d), which calls for simple, concise, and direct allegations and authorizes alternative, hypothetical, and inconsistent pleading, and Federal Rule of Civil Procedure 10, which prescribes the form of the pleadings." 5 Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc. Civ.* § 1205 (4th ed. 2024) (footnote omitted). Additionally, the Seventh Circuit has identified the practical requirements of *Twombly* and *Iqbal* for federal pleading:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to

> provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). And important to the Complaint at issue, the Seventh Circuit has explained that judges are not pigs hunting for truffles in the record. *Johnson v. Advoc. Health & Hosps. Corp.*, 892 F.3d 887, 898 (7th Cir. 2018).

All four counts of the Complaint contain mostly conclusory allegations concerning discriminatory conduct by Ms. Ball and lack the specificity of factual allegations sufficient to set forth a plausible claim. Moreover, all four counts repeat and incorporate by reference paragraphs 1 through 317 of the Complaint as the factual basis for the respective claims without identifying which of the 317 allegations is supportive of the respective counts. In that connection, very few of the 317 factual allegations relate to any discriminatory acts against Plaintiff; rather, the overwhelming focus of these factual allegations relates to employees other than Plaintiff, who allegedly were the object of discriminatory comments or actions by Ms. Ball. It is Plaintiff's pleading obligation under the Federal Rules of Civil Procedure to set forth the applicable factual allegations supporting the claim plead for each count. The Court is not obliged to search among the 317 factual allegations of the Complaint for the factual content supportive of the respective counts set forth. *See Johnson*, 892 F.3d at 898 ("It was, of course, the plaintiffs' responsibility to point us to any evidence that would have supported [the] essential element[s] of their claim."). "[T]he complaint must describe the claim in sufficient detail to give the defendant

'fair notice of what the . . . claim is and the grounds upon which it rests.' " *Concentra Health Servs., Inc.*, 496 F.3d at 776 (quoting *Twombly*, 550 U.S. at 555). As pleaded, the Complaint is clearly inadequate to comply with this requirement. *See* Fed. R. Civ. P. 8(a)(2). Without such factual content, the various interactions between Plaintiff and Ms. Ball do not suffice to provide the necessary notice to Winpak but rather are suggestive of the various efforts by Ms. Ball to mentor Plaintiff in the prevailing workplace culture from her perspective as to how her department's affairs should be conducted.

In an attempt to save the Complaint, Plaintiff denotes the relevancy of different spans of paragraphs. (Doc. 10 at 14–15). Yet the Complaint consists of 317 factual paragraphs which largely illustrate how other Winpak employees were discriminated against and, even when accepted as true and all reasonable inferences are given in favor of Plaintiff, comprises a narrative that has no link or bearing on how she has a viable Title VII claim. Next, Plaintiff argues that functional "notice" is not the issue here, and that her Complaint is far from that of the complaints cited in Defendant's memorandum of law on this issue. (*See* doc. 8 at 12–15). In one respect, this is true. For example, to support its Motion, Defendant cites *James v. Lydon*, No. 19 C 3366, 2020 WL 704795, at *2 (N.D. Ill. Feb. 11, 2020). The court in *James* dismissed the plaintiff's amended complaint against five of the twelve defendants for noncompliance with Rule 8 and for being too prolix. *Id.* The overarching issue in *James*—and in the majority of the cases Defendant cites—was that the complaint inadequately put multiple defendants on notice of which claims were respectively

8

brought against which defendant. *See, e.g.*, *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 778 (7th Cir. 1994) (affirming the district court's dismissal of a complaint that lumped "all the defendants together and [did] not specify who was involved in what activity"); *Amachree v. Garland*, No. 22-1795, 2023 WL 3033493, at *1 (7th Cir. Apr. 21, 2023) ("[Plaintiff] filed a rambling, meandering amended complaint in two parts. All [eight of] the defendants filed motions to dismiss the complaint."). But, in another respect, this argument misses the mark.

As explained, what is at issue and warrants dismissal, is that the Complaint simply contains information that is wholly unsupportive of the respective counts set forth by Plaintiff. And while Plaintiff is correct that prolixity is a "poor ground for rejecting potentially meritorious claims." *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998) ("It takes a lot worse than using 12 pages to set out a claim that could have been stated in 6 pages to justify a dismissal under Rule 8(a)."). Here, the Court is incapable of persisting and "bypass the dross and get on with the case," as it is simply too difficult to pin down the precise nature of Plaintiff's allegations to find she has complied with Rule 8(a). *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 378 (7th Cir. 2003). Because the Complaint is an intermittent stream of consciousness, which just barely toes the line of the Civil Local Rules,[2] dismissal is appropriate.

---

[2] As an admonition, Civil Local Rule 5.1(B)(2) explains, *inter alia*, that "[a]ll documents must be formatted in a plain, roman style. Italics may be used for emphasis." *See also* THE CHICAGO MANUAL OF STYLE ¶ 7.52 (18th ed. 2024) ("Occasionally, **boldface** or underlining (also called underscoring) is used for emphasis. . . . Though the terms *bold* and *underline* both convey the idea of emphasis, bold text for emphasis risks appearing too emphatic in many contexts . . . .").

9

## II. Dismissal without Prejudice

If a court concludes that a claim should be dismissed, that court must also consider whether to grant leave to amend. Leave to amend a complaint should be given "freely . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). "[A] plaintiff whose original complaint has been dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend her complaint before the entire action is dismissed." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015). "Unless it is certain from the face of the complaint that any amendment would be futile or otherwise unwarranted, the district court should grant leave to amend after granting a motion to dismiss." *Barry Aviation Inc. v. Land O'Lakes Mun. Airport Comm'n*, 377 F.3d 682, 687 (7th Cir. 2004); *but see Arreola v. Godinez*, 546 F.3d 788, 796 (7th Cir. 2008) ("[D]istrict courts have broad discretion to deny leave to amend where there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile.").

Against this backdrop, in briefing the instant motion to dismiss, Plaintiff has attached to her brief and referred to a document that is not attached to the Complaint, without analyzing the propriety of such actions. Specifically, Defendant has attached Plaintiff's EEOC charge (doc. 8-1), and Plaintiff attached an unsigned, unsworn, and undated document that she purports is a statement submitted to the EEOC. (Doc. 10-

1). In reply,[3] Defendant asserts that Plaintiff's attachment "was never provided . . . during the EEOC proceedings" and that the attachment was "not referenced as an attachment to [Plaintiff's] EEOC charge," as it is void of any indication of being produced to the EEOC. (Doc. 13).

At the dismissal stage, the general rule is that a court is confined to the pleadings and may not consider extrinsic material while deciding a Rule 12(b)(6) motion to dismiss without converting that motion to a Rule 56 motion for summary judgment. *See 188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); Fed. R. Civ. P. 12(d). But there is a narrow exception to the general rule. *188 LLC*, 300 F.3d at 735. It is "well-settled in this circuit that 'documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim.'" *Id.* (quoting *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

Defendant's exhibit—the EEOC charge—easily falls within this "narrow exception" permitting the document to be considered. *See Levenstein v. Salafsky*, 164 F.3d 345, 347 (7th Cir. 1998); *188 LLC*, 300 F.3d at 735. Plaintiff referred to the EEOC charge in her Complaint (doc. 1 at 2), and it is central to determining the proper scope of her claims. *See Whitehead v. AM Int'l, Inc.*, 860 F. Supp. 1280, 1286 n.5 (N.D. Ill. 1994) ("To determine the proper scope of [plaintiff's] Title VII complaint,

---

[3] Pursuant to Civil Local Rule 7.1(B)(3) and 28 U.S.C. § 1746, the Court granted Defendant's (doc. 12) Motion for Leave to File Reply. (Text Order dated September 3, 2024). *See also Shefts v. Petrakis*, No. 10-cv-1104, 2011 WL 5930469, at *8 (C.D. Ill. Nov. 29, 2011) (explaining that "reply briefs are permitted" when a party opposing a motion introduces "new and unexpected issues in" their response, "and the Court finds that a reply from the moving party would be helpful to its disposition of the motion").

11

however, the court must consider the accusations made in the EEOC charge."). Furthermore, the EEOC charge is a public document, which the Court may take judicial notice of. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013); *Henson v. CSC Credit Servs.*, 29 F.3d 280, 284 (7th Cir. 1994) ("Despite the express language of Fed. R. Civ. P. 12(b), we recently held that '[t]he district court may also take judicial notice of matters of public record' without converting a 12(b)(6) motion into a motion for summary judgment." (quoting *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991))).

In contrast, Plaintiff's exhibit—the unsigned, unsworn, and undated document purportedly submitted to the EEOC (doc. 10-1)—does not fall within the "narrow exception" and will not be considered. *See Levenstein*, 164 F.3d at 347. Plaintiff does not refer to her statements in the exhibit in her Complaint. And while it is true that Plaintiff's exhibit would be "central to [her] claim," being central to a claim is nevertheless the second prong of the conjunctive test—and here, Plaintiff has failed to establish the first prong. *188 LLC*, 300 F.3d at 735. Plaintiff may amend an EEOC charge "to cure technical defects or omissions, including failure to verify the charge, or to clarify and amplify allegations made therein," 29 C.F.R. § 1601.12(b), and the Court "may consider [ ] statements in a sworn affidavit . . . filed in support of the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 502 (7th Cir. 1994). But Plaintiff's exhibit neither clarifies nor amplifies allegations in the original charge; instead, it describes in great detail the alleged retaliatory incidents not pleaded in her Complaint. *See id.* at 505. Moreover, Plaintiff's exhibit is unsigned, unsworn, and

undated—devoid of any markings that indicate authenticity or indication "that the charging party intended the agency to investigate the allegations." *Id.* at 502. To that end, Plaintiff does little to clarify the events surrounding this attachment in her briefing (i.e., the "who, what, when, where, why, and how"); rather, she merely states that the attachment is a "submitted [ ] statement to the EEOC." (Doc. 10 at 3–4). *See Vela v. Vill. of Sauk Vill.*, 218 F.3d 661, 664 (7th Cir. 2000) ("[A]llowing a complaint to encompass allegations outside the ambit of the predicate EEOC charge would frustrate the EEOC's investigatory and conciliatory role, as well as deprive the charged party of notice of the charge." (quoting *Cheek*, 31 F.3d at 500)); *Novitsky v. Am. Consulting Eng'rs, L.L.C.*, 196 F.3d 699, 702 (7th Cir. 1999) (rejecting plaintiff's reliance on information written on the intake form but not included in the charge, where plaintiff had the opportunity to read, obtain professional advice, and signed the charge); *Othon v. LG Elecs. USA, Inc.*, No. 08 C 878, 2008 WL 4287626, at *4 (N.D. Ill. Sept. 15, 2008) (rejecting alleged oral complaints to an investigator in determining whether claims had been exhausted).

The Court, therefore, declines to take judicial notice of Plaintiff's unsigned, unsworn, and undated attachment in determining the scope of Plaintiff's claims. And because the Complaint was dismissed on other grounds, the Court will not analyze the scope of Count I at this juncture. *See Flores v. Bd. of Trustees of Cmty. Coll. Dist. No. 508*, 103 F. Supp. 3d 943, 950 (N.D. Ill. 2015) ("Charges of retaliation are typically not like or reasonably related to charges of discrimination for purposes of the exhaustion requirement."). However, because amending the Complaint is not clearly

futile, and "bad faith" in attaching the purported document (doc. 10-1) has not been proven, Plaintiff is granted leave to amend the Complaint to cure its deficiencies, if she has a good faith basis for doing so.

But any amended complaint must comply with Federal Rules of Civil Procedure 8 and 10. The amended complaint must contain captions identifying the specific events Plaintiff is seeking relief from. "Each allegation must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Plaintiff should not include every fact that she believes supports her claims and need not provide any evidence. *See* 5 Wright & Miller, *Fed. Prac. & Proc. Civ.* § 1281 (4th ed. 2024) ("[A] party need only plead in terms that are sufficient to provide the necessary notice to the opposing party or parties and to satisfy the plausibility standard imposed by the Supreme Court."). Instead, she must simply identify who she is suing and what each person she is suing did that she claims violated the law, using numbered paragraphs, each relating to a single set of circumstances. The Court reminds Plaintiff of their obligations to this Court when making representations. *See* Fed. R. Civ. P. 11. Finally, Plaintiff must abide by the Civil Local Rules, as discussed in this Order.

## Conclusion

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss (doc. 7) is GRANTED without prejudice. Pursuant to Federal Rule of Civil Procedure 15(a)(2), Plaintiff is granted leave to file an amended complaint, if she so desires, to address the deficiencies identified in this Order within fourteen (14) days of the date of this Order.

SO ORDERED.

Entered this 29th day of January 2025.

s/ Joe B. McDade  
JOE BILLY McDADE  
United States Senior District Judge